UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
MATTHEW JAMES WINDLEY,

              Plaintiff,

                                        <u>MEMORANDUM & ORDER</u>
     -against-                        20-CV-0361 (JS)

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
---------------------------------------X
APPEARANCES
For Plaintiff:     Charles E. Binder, Esq.
                   Law Offices of Charles E. Binder and
                     Harry J. Binder
                   485 Madison Avenue, Suite 501
                   New York, New York  10022

For Defendant:     Anne M. Zeigler, Esq.
                   United States Attorney's Office
                   Eastern District of New York
                   c/o SSA/OGC
                   601 East 12th Street, Room 965
                   Kansas City, Missouri  64106

SEYBERT, District Judge:

        Plaintiff Matthew James Windley ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the denial of his application for Social Security Disability Insurance Benefits by the Commissioner of Social Security (the "Commissioner"). (Compl., ECF No. 1.)  Pending before the Court are the parties' cross-motions for judgment on the pleadings.  (Comm'r Mot., ECF No. 11, Comm'r Support Memo, ECF No. 11-1, Comm'r Reply, ECF No.

17; Pl. Mot., ECF No. 14; Pl. Support Memo, ECF No. 15; Pl. Reply, ECF No. 20;)  For the following reasons, Plaintiff's motion is GRANTED, and the Commissioner's motion is DENIED.

BACKGROUND[1]

I.   Procedural History

On July 1, 2016, Plaintiff completed an application for disability insurance benefits alleging disability as of March 25, 2016, due to chronic depression, anxiety, bipolar disorder, panic attacks, sleeplessness, bladder dysfunction, racing thoughts, and indecisiveness.  (R. 53-55, 131-32, 146-47.)  After Plaintiff's claim was denied, he requested a hearing before an Administrative Law Judge ("ALJ").  (R. 68-70.)  On July 31, 2018, Plaintiff, accompanied by a counsel, appeared for a hearing before ALJ Alan B. Berkowitz (the "Hearing").  (R. 27-52.)  Dawn Blythe, a vocational expert ("VE"), also testified at the Hearing.  (R. 45-50.)

In a decision dated August 10, 2018, the ALJ found that Plaintiff was not disabled.  (R. 14-26.)  On July 18, 2019, the Social Security Administration's Appeals Council denied

---

[1]  The background is derived from the administrative record filed by the Commissioner on June 3, 2020.  (See ECF No. 9.)  For purposes of this Memorandum and Order, familiarity with the administrative record is presumed.  The Court's discussion of the evidence is limited to the challenges and responses raised in the parties' briefs.  Hereafter, the administrative record will be denoted "R." When citing to the administrative record, the Court will use the relevant Bates number(s) provided therein.

Plaintiff's request for review, and the ALJ's decision became the Commissioner's final decision.  (R. 1-7, 128-29.)

Plaintiff initiated this action on January 22, 2020. (See Compl.)  On July 28, 2020, the Commissioner moved for judgment on the pleadings. (See Comm'r Mot.)   On September 24, 2020, Plaintiff cross-moved for judgment on the pleadings. (Pl. Mot.) On October 26, 2020, the Commissioner filed his reply.  (Comm'r Reply.)  Plaintiff filed his sur-reply on November 10, 2020.  (Pl. Reply.)

II.  Evidence Presented to the ALJ

The Court first summarizes Plaintiff's testimonial evidence and employment history before turning to his medical records and the VE's testimony.

A.   Testimonial Evidence and Employment History

Plaintiff was born in 1992.  (R. 131.)  He completed high school in 2010 with a certificate in eCommerce.  (R. 147.) Plaintiff started college but withdrew due to absences.  (R. 225.) At the time of the July 31, 2018 Hearing, Plaintiff was twenty-six years old and lived with his parents.  (R. 30.)

Plaintiff testified that he had been unable to work since March 25, 2016, due to his unstable mental state.  (R. 32; see also R. 146 (Disability Report listing as all the physical and mental conditions limiting ability to work:  chronic depression, anxiety, bipolar disorder, panic attacks, sleeplessness, bladder

dysfunction, racing thoughts, and indecisiveness).) Before March 25, Plaintiff worked: in retail as a sales person; as a grocery laborer/stock worker; and, a restaurant dishwasher. (R. 49.)

Concerning his limitations, Plaintiff claimed he had problems paying attention because he was easily distracted and could not stay focused. (R. 164.) He also represented that he could not follow spoken or written instructions because he could not stay focused and was forgetful. (R. 165.) He testified that he had suicidal thoughts at times and daily violent thoughts. (R. 32-33.) Plaintiff stated he experienced "flashes of rage" and would need to step away from situations to "cool off". (R. 38.) Moreover, Plaintiff would become argumentative because he felt people could read his mind and control him. (R. 43.) Plaintiff also testified that, on a typical day, he: takes the bus to the grocery store; does his laundry; and cooks for himself. (R. 31, 36.) He also stated that he takes Depakote and Seroquel as prescribed by his psychiatrist (R. 35), as well as smokes marijuana because it makes him feel "at peace." (R. 44.)

B.    Medical Evidence

In February 2010, Plaintiff was admitted to South Oaks Hospital for inpatient mental health treatment for a psychotic disorder and substance abuse issue. (R. 217-18.) Before his February 2010 admission, Plaintiff: had been expelled twice from school for drug use (id. at 217-18); was subsequently arrested

4

twice for trespassing after trying to return to school; had been placed in St. Catherine's Hospital by his parents; and, had previously been admitted twice to South Oaks Hospital. (Id.) After Plaintiff's January 2010 release from South Oaks hospital, he was sent to Phoenix House where Plaintiff: refused to bathe; reluctantly participated in drug rehabilitation; had written "judgment day is coming, and all will pay" on walls in the art room; and, claimed that his stepfather sexually abused him. (Id. at 217.) State authorities investigated this claim and declared it unfounded. (Id.)

In June 2016, Plaintiff began mental health treatment with psychiatrist Isabel Tolentino Mirasol, M.D ("Dr. Mirasol"). (R. 223-27.) Plaintiff reported: a history of mood swings since the age of 17; racing thoughts; increased energy and decreased need for sleep; feelings of euphoria; pressured speech that lasted for several days; alternating periods of depression and dysphoric moods; and thoughts of cutting himself. (R. 205, 223.) A mental status examination showed Plaintiff had a limited affect, a sad mood, thoughts that he talked to God, and paranoid delusions. (Id.) Plaintiff denied active suicidal or homicidal thoughts. (Id.) Dr. Mirasol noted that Plaintiff was pleasant and cooperative, with intact cognition, judgment, and insight. (Id.) She diagnosed Plaintiff with bipolar affective disorder with psychotic features and prescribed Seroquel. (R. 205, 224.)

5

On June 29, 2016, Plaintiff revisited Dr. Mirasol; another assessment showed his mental status remained unchanged. (R. 227.) Plaintiff reported racing thoughts and a hyper feeling; a mental status exam revealed constricted affect and paranoid thinking. (Id.) Dr. Mirasol wrote that Plaintiff made no progress, increased his dose of Seroquel, and added Depakote to his prescribed medications. Id.

On August 3, 2016, Plaintiff attended a psychiatric evaluation with Paul Herman, Ph.D. ("Dr. Herman"). (R. 201-04.) Plaintiff reported a history of substance abuse and delusional thoughts, including thinking that people were following or using witchcraft against him. (R. 201.) Plaintiff further reported problems sleeping, an increased appetite, a history of delusional thinking, lack of motivation, trouble focusing, and impulsiveness. (R. 201-02.) Plaintiff stated he did not like his last job, including the work, the customers, or the people he worked with. (Id.) Plaintiff found the job unnecessary and claimed he lacked motivation because he lived with his parents. (R. 202.) Though Plaintiff reported difficulty focusing, he claimed to have no significant problems with daily activities like cooking, laundry, and shopping. (Id.) A mental status examination showed Plaintiff had: a bland affect; neutral mood; intact attention and concentration; mixed recent memory skills and intact remote memory

skills; average cognitive function: and fair insight and judgment. (R. 202-03.)

Dr. Herman found no limitations concerning abilities to: follow and understand simple directions and instructions; perform simple tasks; maintain attention and concentration for low-level employment; learn simple lessons; make appropriate/simple work-related decisions; or maintain a regular schedule.   (R. 203.) Furthermore, Dr. Herman found moderate limitations in Plaintiff's abilities to adequately relate with others and appropriately deal with stress.   (Id.) He concluded that Plaintiff's symptoms did not appear significant enough to interfere with his ability to function daily to the extent that vocational functioning would be precluded. (Id.)   His diagnosis of Plaintiff was delusional disorder and antitussive use disorder in sustained remission.   (R. 204.)

Plaintiff saw Dr. Mirasol again on August 29, 2016.  (R. 228.)  As a result of the increased dose of medication, Plaintiff reported some improvement with his racing thoughts but said he was still unable to focus and had residual delusional thinking.  (Id.) Dr. Mirasol noted that Plaintiff appeared calmer with a constricted affect and a neutral mood; she increased Plaintiff's dose of Seroquel and continued treatment with Depakote.  (Id.)

On September 25, 2016, Plaintiff has another appointment with Dr. Mirasol.  (R. 228.)  At this time, Plaintiff reported that his paranoid thinking was a little better and that his racing

thoughts were under better control. (Id.) However, Plaintiff further reported residual auditory hallucinations that keep him awake at night. (Id.) Dr. Mirasol noted that Plaintiff's affect was mildly constricted. (Id.)

The next day, on September 26, 2016, Dr. Mirasol completed an employee assistance research form at the behest of the Social Security Administration. (R. 205.) Plaintiff's listed diagnosis was bipolar affective disorder with psychotic features. (Id.). The Doctor reported Plaintiff: had racing thoughts, poor sleep, and delusional thinking; exhibited auditory hallucinations, intact attention and concentration and memory, a constricted affect, and a neutral mood; and was limited in understanding and memory due to chronic delusional thinking and racing thoughts. (R. 205-06.) Dr. Mirasol stated Plaintiff had not been able to hold a job due to rapid mood swings. (R. 206.) She reported Plaintiff had limited ability (1) in sustained concentration and persistence, noting he could not maintain a schedule, and (2) in social interactions, noting he prefers to stay home due to paranoid thoughts. (Id.) Dr. Mirasol further reported Plaintiff was limited in adaptive abilities because he had unrealistic goals and paranoid thinking. (R. 207.) Dr. Mirasol concluded that Plaintiff was not capable of full-time employment due to his symptoms. (Id.)

On October 10, 2016, Plaintiff had an initial visit and established primary care with John M. Reyes, D.O. ("Dr. Reyes").

(R. 254.)  Plaintiff reported active problems with anxiety, bipolar disorder, depression, and post-traumatic stress disorder.  (Id.) Plaintiff said he smoked cigarettes and marijuana.  Id.  A mental status finding revealed a normal affect and intact insight and judgment.  Plaintiff responded "no" when asked whether "[o]ver the past 2 weeks, have you felt down, depressed, or hopeless?"  (R. 255.)  (Id.)  He gave the same response when asked whether "[o]ver the past 2 weeks, have you felt little interest or pleasure doing things?"  (Id.)

On October 31, 2016, Plaintiff visited Dr. Mirasol and reported that his mood had stabilized but that he was not sleeping well and not taking his medication because he ran out.  (R. 229.) At that appointment, Plaintiff stated he was not experiencing hallucinations or delusions.  (Id.)  Upon examination, Plaintiff had a dull affect, euthymic mood, and intact cognition.  (R. 229-30.)  On November 21, 2016, Plaintiff reported to Dr. Mirasol that his mood was stable, he was experiencing proper sleep, and he was receiving positive feedback from his therapist.  (R. 230.)  A mental status examination showed Plaintiff had a mildly restricted affect and euthymic mood with no overt thought disorder.  (Id.)

During a visit on January 16, 2017, Plaintiff told Dr. Mirasol that he felt better, his mood was stable, and he kept busy doing chores around the house.  (R. 231.)  He reported that he had no delusions or hallucinations.  (Id.)

9

On May 4, 2014, 2017, Plaintiff visited Dr. Reyes and requested and received a refill of his psychiatric medications. (R. 250-51.)   On May 22, 2017, Plaintiff saw Dr. Mirasol and reported he cut back on his medications because they were too sedating.  (R. 232.)  On June 19, 2017, Plaintiff saw Dr. Mirasol and said his symptoms were under control and he was sleeping better.  (R. 233.)  Plaintiff reported he had increased energy and Dr. Mirasol noted no overt thought disorders.  (Id.)  She further stated that Plaintiff was "unemployable at this time."  (R. 234.)

On July 18, 2017, Plaintiff reported to Dr. Mirasol having residual auditory hallucinations, resulting in the Doctor increasing Plaintiff's medication dosage.  (R. 235.)  On August 14, 2017, Plaintiff admitted having occasional visual hallucinations and using marijuana without intending to quit; he was advised to enroll in a program to help him quit smoking marijuana.  (R. 236-37.)  At his October 9, 2017 appointment with Dr. Mirasol, Plaintiff reported, inter alia: he stopped smoking marijuana; he was able to think clearer; and, he intended to go back to work and then back to school.  (R. 237.)

On November 28, 2017, Plaintiff met with Dr. Reyes for an annual examination; he reported he worked as an overnight stocker at a grocery store while continuing to smoke cigarettes, but drank rarely.  (R. 247.)  On December 18, 2017, Plaintiff met with Dr. Mirasol and reported a stable mood with his current

10

medication; Dr. Mirasol increased Plaintiff's dosage of Depakote. (R. 238.)

On April 12, 2018, Plaintiff underwent a second psychiatric evaluation with Dr. Herman. (R. 208.) Dr. Herman reported: "When asked about depressive and anxiety related symptomatology or any other psychiatric or psychological difficulties, [Plaintiff] reported no suicidal or homicidal ideation, intent, or plan and no thought disorder." (Id.) However, Plaintiff indicated a low mood associated with overall life circumstances. (Id.) A mental status examination showed Plaintiff was cooperative with somewhat bland social skills. (R. 209.) Dr. Herman concluded Plaintiff had: somewhat below average attention and concentration; intact immediate recall and remote memory skills; average cognitive functioning; and, fair insight and judgment. (Id.) From a psychological/psychiatric perspective, Dr. Herman reported:

> [T]here appears to be no evidence of limitation with respect to the [Plaintiff]'s ability to follow and understand simple instructions, perform a simple task, maintain attention and concentration at a level sufficient for low-level employment, sustain concentration and a consistent pace, ordinary routine, and regular attendance at a level sufficient for low-level employment, regulate emotions, maintain well-being, personal hygiene, and appropriate attire, beware of hazards and take appropriate precautions.

(R. 210.)   Dr. Herman concluded that the evaluation results did "not appear to be consistent with psychiatric problems that would significantly interfere with [Plaintiff]'s ability to function daily."   His prognosis of Plaintiff was "[g]uarded, given his history and inconsistent reporting."   (<u>Id.</u>)   Based upon his below average attention and concentration, Dr. Herman assessed Plaintiff to be: moderately impaired in understanding and remembering complex instructions; markedly impaired (<u>i.e.</u>, seriously limited in independently functioning on a sustained basis) to carry out complex instructions; and, extremely impaired (<u>i.e.</u>, unable to independently function on a sustained basis) in his ability to make judgments on complex work-related decisions.   (R. 211.)

On June 4, 2018, Plaintiff visited Dr. Mirasol for a mental status evaluation; the Doctor found Plaintiff: agitated; using pressured speech; had an excessive appetite; in an irritable mood; and suffering paranoid thinking since he believed he was being followed.   (R. 239.)   Plaintiff screened positive for marijuana, and Dr. Mirasol advised him to quit.   (R. 2410-41.)

On July 2, 2018, Plaintiff met with Dr. Mirasol again. (R. 242.)   A mental status exam revealed mildly pressured speech, argumentative behavior, a limited affect, an angry mood, irritability, paranoia, thinking that he is being watched, fair cognition, and impaired judgment/insight.   (<u>Id.</u>)   Plaintiff stated he would continue to use marijuana, claiming it relaxes him.   (<u>Id.</u>)

C.   The VE's Testimony

At the Hearing, the VE testified that Plaintiff had worked as a store laborer (stock worker), which required light exertion at one job and heavy exertion in another; kitchen helper, which required medium exertion; and general merchandise salesperson, which required light exertion.  (R. 49.)  When asked to consider a hypothetical individual with Plaintiff's vocational profile and residual functional capacity ("RFC"), the VE testified that such an individual would be capable of performing some of his past work such as a store laborer (or stock worker) and a dishwasher.  (R. 50.)  When the ALJ added an additional limitation, namely, only occasional interaction with supervisors, the VE testified that such limitations would not eliminate any jobs.  (R. 50-51.)  However, when the ALJ added an additional limitation, namely, that the hypothetical individual is on task only 80% of the workday, the VE testified that such a limitation would "eliminate jobs."  (R. 51.)

DISCUSSION

I.   Standard of Review

In reviewing a final decision of the Commissioner, a district court must "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied."  Rucker v.

13

Kijakazi, 48 F.4th 86, 90-91 (2d Cir. 2022) (quoting Estrella v. Berryhill, 925 F.3d 90, 95 (2d Cir. 2019)). District courts will overturn an ALJ's decision only if the ALJ applied an incorrect legal standard, or if the ALJ's ruling was not supported by substantial evidence. Id. (citing Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012)). "[S]ubstantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

II.  The ALJ's Decision

    A. The Five-Step Disability Analysis

Initially, the ALJ found that Plaintiff meets the insured status requirements of his claims through June 30, 2020. (R. 19.) Next, the ALJ applied the familiar five-step disability analysis (further discussed, infra). Ultimately, the ALJ concluded that Plaintiff was not disabled from March 25, 2016, the alleged disability onset date, through August 10, 2018, the decision date. (R. 23); see also 20 C.F.R. § 404.1520.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 19.) At step two, the ALJ found that Plaintiff had severe impairments consisting of bipolar disorder, major depressive disorder, and anxiety disorder. (R. 19.)

14

At <u>step three</u>, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of any impairments listed in Appendix 1 of the Social Security regulation (R. 20-21.)   In doing so, the ALJ considered the four broad functional areas, known as the "paragraph B" criteria,[2] and found that Plaintiff's mental impairments are not severe because they do not result in at least one extreme or two marked limitations in (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; (4) or adapting or managing themselves.   (R. 20.)   The ALJ reasoned that (a) Plaintiff has a mild limitation in understanding, remembering, or applying information because the Plaintiff was able to complete high school (R. 20); (b) Plaintiff has a moderate limitation in interacting with others because Plaintiff "prefers to stay home due to paranoia" and "does not have much in the way of friends (<u>id.</u>); (c) Plaintiff has a mild limitation concentrating, persisting, or maintaining pace because Dr. Mirasol and Dr. Herman concluded his attention span was intact (<u>id.</u>); and (d) Plaintiff has a moderate limitation in adapting or

---

[2]   To satisfy the "paragraph B" criteria, a claimant's mental impairments must result in at least one extreme or two marked limitations in the following broad areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.   <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 12.00AAA(2)(b), 12.04B, 12.06B, & 12.15B.

managing himself because Plaintiff frequently smokes marijuana, has episodes of paranoia and mood swings, and occasionally has poor judgment (id.).  The ALJ further concluded that Plaintiff did not meet "paragraph C" criteria[3] because he does not demonstrate a complete inability to function outside of a highly structured environment or tolerate even a marginal increase in stressful demands without the ability to tolerate even a marginal increase in stressful demands decompensating.  (Id.)

At step four, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels, with certain non-exertional limitations (R. 21); see also 20 C.F.R. § 404.1529, i.e., Plaintiff can only: perform simple, repetitive tasks with no more than one- or two-step instructions; tolerate occasional workplace changes; and, tolerate occasional interaction with supervisors, coworkers, and the public.  (R. 21.)  In support of his RFC determination, the ALJ: summarized Plaintiff's hospital records from South Oaks Hospital; observed that Plaintiff was molested by his stepfather when he was younger and has a great deal of anger over the abuse; and has a history of substance abuse.

---

[3]  A mental impairment satisfies "paragraph C" if it is "serious and persistent," established by a medically documented history of the existence of the disorder over a period of at least two years, with evidence of both ongoing treatment and marginal adjustment, meaning "minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life."  20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 12.04C, 12.06C, 12.15C.

(R. 21.)  He recited Plaintiff's three admissions as a patient of South Oaks Hospital after being expelled from Phoenix House for vandalism.  The ALJ further observed that Plaintiff had been expelled from school, arrested for criminal trespass, and participated in drug rehabilitation with reluctance.  (R. 21.) Thereafter, the ALJ turned to the medical evidence.

The ALJ recognized Plaintiff's treating psychiatrist to be Dr. Isabel Mirasol, who, in September 2016, diagnosed Plaintiff with bipolar affective disorder with psychotic features.  (R. 21.) The ALJ summarized the examination findings from Dr. Mirasol, i.e.: Plaintiff had a long history of substance abuse; Plaintiff's symptoms include racing thoughts, poor sleep, delusional thinking, and auditory hallucinations; Plaintiff's affect is constricted and limited, with speech appearing as mildly pressured, and mood appearing as angry and irritable; Plaintiff complained he was "being watched"; and Plaintiff was prescribed Divalproex Sodium and Seroquel.  (R. 21-22.)

Next, the ALJ summarized Plaintiff's hearing testimony: he has violent thoughts, suicidal tendencies, and flashes of rage; he fights with his family often; his most prolonged employment lasted a year; he left his jobs because of mental health issues; and he does not have any friends.  (R. 22.)  The ALJ noted Plaintiff: continues to smoke marijuana; is able to care for his personal needs without assistance; and travels alone using public

17

transportation.  (Id.)  The ALJ stated Plaintiff exhibited little work motivation, with his employment history being "spotty at best."  (Id.)  Thus, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  (Id.)

The ALJ then considered whether Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms are consistent with the medical and other evidence in the record, concluding that said statements were not consistent since the objective medical evidence does not support the existence of such extensive limitations.  (R. 22.)  This conclusion was based upon the ALJ's review of the medical records and evaluations of: (1) Dr. Reyes, Plaintiff's primary care physician, who noted Plaintiff's psychiatric conditions were stable while on medication (id.); (2) Dr. Mirasol, who concluded that Plaintiff has "chronic delusional thinking due to racing thoughts", is "unable to maintain a schedule", and is "not capable of full time employment" (id.); and (3) Dr. Herman, who, "upon two complete mental status evaluations," concluded that (i) there "appears to be no evidence of limitations with respect to this claimant's ability to follow and understand simple directions and instructions, perform simple tasks, make appropriate/simple work-related decision, and maintain a regular schedule," and that (ii) Plaintiff "has moderate limitations relating with others and managing stress" (id.).  Of

18

significance, the ALJ gave Dr. Mirasol's opinion less weight because the limitations described by her "are in excess of what would reasonably be expected from the treating notes" (id. (stating further that "the conclusion of disability is reserved to the Commissioner")) but, gave Dr. Herman's opinion "great weight" which opinion he found to be "consistent with the record as a whole." (R. 23.)

Finally, at step five, the ALJ determined that Plaintiff can perform past relevant work as a laborer/stock worker (medium) or dishwasher/kitchen helper (medium) because the activities of those jobs do not require performing work-related activities precluded by his RFC. (R. 23.) Accordingly, the ALJ determined that Plaintiff is not disabled. (R. 23.)

III. Analysis

Plaintiff advances several arguments on appeal, including: (1) The ALJ failed to properly weigh the medical opinion evidence (Pl. Br. 8-14); and (2) the ALJ failed to resolve apparent conflicts between the testimony of the VE and the Department of Labor's Dictionary of Occupational Titles ("DOT") (id. at 6-8). The Court turns to those two arguments.[4]

---

[4]   Plaintiff also raised the argument that the ALJ failed to properly evaluate Plaintiff's subjective statements, which is his last argument. (See Pl. Support Memo.) However, in his Reply, that, in this instance, is effectively Plaintiff's Opposition to the Commissioner's Motion for Judgment on the Pleadings, Plaintiff

A. The Treating Physician Rule[5]

The "treating physician rule" provides that the medical opinions and reports of a claimant's treating physicians are to be given "special evidentiary weight." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).  The regulations state:

> Generally, we give more weight to medical opinions from your treating sources . . . . If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

does not respond to the Commissioner's arguments raised in this regard. (See Pl. Reply, in toto.)  Thus, the Court deems Plaintiff to have abandoned his evaluation-of-subjective-statement argument in support of remand.  See generally Alexander v. Central Islip Sch. Dist., No. 18-CV-2521, 2021 WL 4340730, at *11 (E.D.N.Y. Sept. 22, 2021) (ruling that where plaintiff did "not responded in any meaningful manner to [d]efendant's arguments challenging her . . . claims," plaintiff deemed to waive those claims) (citing Jackson v. Fed. Express, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."); further citations omitted).

[5] "In 2017, new SSA regulations came into effect.  The newest regulations apply only to claims filed with the SSA on or after March 27, 2017.  Accordingly, because Plaintiff's claim was filed in 201[6], the Court applies the regulations that were in effect at the time of filing." Cervini v. Saul, No. 17-CV-2128, 2020 WL 2615929, at *5 (E.D.N.Y. May 21, 2020) (citing Ogirri v. Berryhill, No. 16-CV-9143, 2018 WL 1115221, at *6 n.7 (S.D.N.Y. Feb. 28, 2018) (noting 2017 amendments to regulations but reviewing ALJ's decision under prior versions); Rousey v. Comm'r of Soc. Sec., No. 16-CV-9500, 2018 WL 377364, at *8 n.8, *12 n.10 (S.D.N.Y. Jan. 11, 2018) (same)).

> evidence in your case record, we will give it
> controlling weight.

20 C.F.R. § 404.1527(c)(2) (emphasis supplied; second and third
alterations in original).  Thus, the opinion of a treating
physician "need not be given controlling weight where [it is]
contradicted by other substantial evidence in the record." Molina
v. Colvin, No. 13-CV-4701, 2014 WL 3925303, at *2 (S.D.N.Y. Aug.
7, 2014) (internal quotation marks and citation omitted).

When an ALJ does not afford controlling weight to the
opinion of a treating physician, the ALJ must consider several
factors:

> (1) the length of the treatment relationship
> and frequency of the examination; (2) the
> nature and extent of the treatment
> relationship; (3) the extent to which the
> opinion is supported by medical and laboratory
> findings; (4) the physician's consistency with
> the record as a whole; and (5) whether the
> physician is a specialist.

Schnetzler v. Astrue, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008)
(citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Halloran v.
Barnhart, 362 F.3d 28, 32 (2d Cir. 2004)); see also Estrella, 925
F.3d at 95.  The ALJ must also set forth "'good reasons' for not
crediting the opinion of a [plaintiff's] treating physician."
Schnetzler, 533 F. Supp. 2d at 287.  An ALJ provides "'good
reasons' for discounting a treating physician's opinion that
reflect in substance the factors as set forth in [Section]
404.1527(d)(2), even though the ALJ declines to examine the factors

with explicit reference to the regulation." Crowell v. Comm'r of Soc. Sec., 705 F. App'x 34, 35 (2d Cir. 2017) ("While the ALJ did not explicitly discuss the treating physician rule, he nonetheless stated that [the physician's] opinion . . . was contradictory to the rest of the record evidence."). "Ultimately, an ALJ must comprehensively set forth her reasons for the weight assigned to a treating physician's opinion." Id. (internal quotation marks and citation omitted). "Good reasons" are reasons that assure the reviewing court that "the substance of the treating physician rule was not traversed." Estrella, 925 F.3d at 96.

Plaintiff argues that the ALJ erred in giving "little weight" to the opinions of Dr. Mirasol, Plaintiff's treating physician. (Pl. Support Memo at 8-9.) Instead, the ALJ credited the opinion of Dr. Herman, the consultative psychologist expert, giving it "great weight" even though Dr. Herman had not reviewed all the medical records relevant to Plaintiff's conditions. (Id. at 9, 13.) Plaintiff also points out that the ALJ did not apply the factors typically used to determine how much weight to give the treating physician. (Id. at 14.) The Court agrees.

Upon the record presented, the ALJ failed to properly consider the relevant factors before deciding not to assign controlling weight to Dr. Mirasol's opinion. First, even though he made a point of acknowledging that Dr. Herman saw Plaintiff twice, once in 2016 and once in 2018 (R. 21-22), he failed to also

recognize that Dr. Mirasol met with Plaintiff eleven times between June 2016 and July 2018.  (R. 223, 228, 205, 299, 230, 231, 232, 233, 235, 236, 239, 242.)  Second, while noting that Dr. Mirasol was Plaintiff's treating psychiatrist who prescribed Plaintiff medications (R. 21-22), the ALJ focused on Dr. Mirasol's opinion provided early in her treatment of Plaintiff; yet, her opinions remained consistent throughout her two-year treatment of Plaintiff. (Compare R. 207 (finding Plaintiff was limited in understanding and memory because of chronic delusional thinking and racing thoughts and limited in adaptation because he had unrealistic goals due to paranoid thinking), with R. 239 (finding, two years later, Plaintiff had pressured speech, argumentative behavior, a limited affect, an angry mood, irritability, paranoia, thinking that he is being watched, fair cognition, and impaired judgment/insight).)  Third, the ALJ did not discuss the extent to which Dr. Mirasol's opinions were supported by medical and laboratory findings or explain why Dr. Mirasol's treatment deserved less weight than Dr. Herman's.  Yet, "[i]nterviewing a patient and assessing her subjective self-reported symptoms can be an acceptable clinical diagnostic technique when the condition complained of involves a substantial subjective component." Parikh v. Astrue, No. 07-CV-3742, 2008 WL 597190, at *6 (E.D.N.Y. Mar. 2, 2008); see also Rucker, 48 F.4th at 92 (stating that "cases

involving mental health . . . tend to be less susceptible to
objective testing and assessment"). Moreover:

> [a]dherence to the treating physician rule is
> "all the more important in cases involving
> mental health," such as this one. Flynn v.
> Commissioner of Social Security
> Administration, 729 F. App'x 119, 122 (2d Cir.
> 2018). That is because mental health
> impairments are "not susceptible" to certain
> diagnostic tools that can be used to determine
> physical impairments during an exam, id., and
> "[a] mental health patient may have good days
> and bad days [and] may respond to different
> stressors that are not always active." Bodden
> v. Colvin, No. 14-CV-08731, 2015 WL 8757129,
> at *9 (S.D.N.Y. Dec. 14, 2015). A person with
> cyclical mental health issues, who "'half the
> time . . . is well enough [to] work, and half
> the time . . . is not[,] . . . could not hold
> down a full-time job,'" Estrella, 925 F.3d at
> 97 (quoting Bauer v. Astrue, 532 F.3d 606, 609
> (7th Cir. 2008)). Accordingly, a longitudinal
> understanding of the claimant's impairment is
> particularly important with respect to mental
> health conditions and "cannot be readily
> achieved by a single consultative
> examination." Bodden, 2015 WL 8757129 at *9
> (collecting cases); Estrella, 925 F.3d at 98
> ("a one-time snapshot of a claimant's status
> may not be indicative of her longitudinal
> mental health").

Arias v. Kijakazi, No. 21-CV-3118, -- F. Supp.3d --, 2022 WL
3646003, at *5 (S.D.N.Y. Aug. 24, 2022). In conjunction therewith,
it is noteworthy that, in supporting the ALJ's consideration of
Dr. Herman's evaluations, the Commissioner would have the Court
reject Plaintiff's argument that Dr. Herman did not review any of
Plaintiff's psychiatric treatment notes. (See Comm'r Reply at 3.)
The Commissioner argues (1) as to Dr. Herman's first evaluation in

2016, "there were no significant treatment records to review", and (2) as to Dr. Herman's second evaluation in 2018, the Doctor "was aware of Plaintiff's necessary background information" having recognized "Plaintiff had received intermittent outpatient treatment since about 2016." Even accepting, arguendo, the Commissioner's argument regarding Dr. Herman's first evaluation, that is not enough to hold Dr. Herman's second evaluation should be assigned controlling weight since an "awareness" about Plaintiff's background information, without more, is insufficient to outweigh Dr. Mirasol's two years of medical opinions regarding the nature and severity of Plaintiff's "impairments, including diagnoses and prognosis, symptoms, and descriptions of what Plaintiff could still do despite his impairments." (Pl. Support Memo at 10.) See, e.g., Provisero v. Astrue, No. 09-CV-4695, 2012 WL 537570, at *7 (E.D.N.Y. Feb. 15, 2012).

Fourth, and relatedly, the ALJ failed to properly consider the consistency of Dr. Mirasol's diagnoses, which were not necessarily inconsistent with Dr. Reyes' October 2016 observation that Plaintiff's psychiatric conditions are stable when Plaintiff is on medication. Instead, the ALJ (1) baldly contends Plaintiff's "limitations are in excess of what would reasonably be expected from the treating notes" (R. 22 (emphasis added)), and (2) without any elaboration, opines that the opinions of Dr. Herman are "consistent with the record as a whole" (R. 23).

25

Yet, in the absence of any explanation for or citation to "what would reasonably be expected," it is difficult for the Court not to conclude that the ALJ has impermissibly rejected a medical opinion deserving of controlling weight and substituted his own opinion about "what would reasonably be expected." Cf. Leanne S. v. Comm'r of Soc. Sec., No. 3:20-CV-1447, 2022 WL 4448245, at *14 (N.D. N.Y. Sept. 23, 2022) (citing M.-M. v. Kijakazi, No. 5:21-CV-0014, 2022 WL 1223202, at *17 (D. Vt. Apr. 26, 2022), and Leslie H. L. v. Comm'r of Soc. Sec. Admin., No. 3:21-CV-0150, 2021 WL 5937649, at *6 (D. Conn. Dec. 16, 2021)). In other words, this is not a good reason for not crediting the opinion of the treating provider. See Diaz v. Comm'r of Soc. Sec., No. 21-CV-1609, 2022 WL 16715920, at *4 (E.D.N.Y. Nov. 4, 2022) (quoting Cervini v. Saul, No. 17-CV-2128, 2020 WL 2615929, at *5 (E.D.N.Y. May 21, 2020)). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" Id. (quoting Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015); further citation omitted); see also Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) ("Remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." (emphasis added) (citing Myers v. Apfel, 238 F.3d 617, 621 (5th Cir. 2001)); Colon Medina v. Comm'r of Soc.

Sec., 351 F. Supp. 3d 295, 303 (W.D.N.Y. 2018) ("Because the ALJ's reasoning for rejecting several opinions in the record is abundantly unclear to the Court, the matter must be remanded for further proceedings."). Thus, the Court finds that the ALJ violated the treating physician rule, warranting remand.

B. Conflicts between the VE's testimony and the DOT

Under the Social Security Act, a claimant is ineligible for disability insurance benefits unless, among other things, he suffers from an impairment that precludes his participation in any kind of substantial gainful work which exists in the national economy. See 42 U.S.C. § 423(d)(2)(A). In step four, the ALJ calculated Plaintiff's RFC and found Plaintiff could: adjust to work limited to "simple, repetitive tasks with no more than one or two-step instructions;" "tolerate only occasional workplace changes;" and "tolerate only occasional interaction with supervisors, coworkers[,] and the public." (R. 21.)

In step five, the Commissioner bears the burden of showing that jobs exist in the national or local economies that the claimant can perform given his RFC. See 68 Fed. Reg. 51155 (Aug. 26, 2003); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009). The ALJ may determine there are a significant number of jobs available to a claimant by relying upon the DOT; in addition, the Commissioner may use a VE to resolve complex vocational issues. Lockwood v. Comm'r of Soc. Sec. Admin., 914 F.3d 87, 91 (2d Cir.

27

2019).  However, a VE's testimony cannot constitute substantial evidence when it contains an apparent, unresolved conflict with the DOT.  Id.  The ALJ must identify and inquire into all apparent conflicts between a VE's testimony and the DOT, even those that are not obvious.  Id. at 92.  And "[a]bsent such an inquiry, the Commissioner lacks a substantial basis for concluding that no such conflicts in fact exist."  Id. at 93; Haman v. Berryhill, No. 17-CV-1752, 2019 WL 1383439, at *16 (D. Conn. Mar. 27, 2019) (observing that the Second Circuit "requires the ALJ to identify and inquire into all apparent conflicts—even those that are not obvious) (citing Lockwood, 914 F.3d at 92).

Plaintiff argues that the ALJ relied on the VE's testimony that contained an apparent unexamined conflict with the DOT. (Pl. Support Memo at 6.)  The VE identified two jobs Plaintiff could perform: a laborer/stock worker and a dishwasher/kitchen helper. (R. 49.)  The DOT's description of these jobs states that each requires a reasoning level of two.  Level two reasoning requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." Appendix C - Components of the Definition Trailer, 1991 WL 688702 (emphasis added).  In contrast, level one reasoning requires a worker to "[a]pply commonsense understanding to carry out simple one- or two-step instructions." Id. (emphasis added).

28

Plaintiff argues that because the ALJ limited him to tasks with no more than one- to two-step instructions, which is categorically similar to level one reasoning, the Commissioner made a reversible error by relying on the VE's testimony that Plaintiff could perform work requiring level two reasoning.  In opposition, Defendant contends that a DOT reasoning level of two does not conflict with the ability to perform "simple and repetitive tasks."  (Comm'r Reply at 6.)  However, cases from this Circuit finding no conflict between reasoning levels two or three and the ability to perform "simple" tasks, see, e.g., Juliana Jolean A. v. Kijakazi, No. 20-CV-1268, 2022 WL 595361, at *12 (N.D.N.Y. Feb. 28, 2022) (holding no conflict between only "simple instructions" and reasoning level three.); Martinez v. Comm'r of Soc. Sec., No. 15-CV-3649, 2017 WL 1155778, at *17 (E.D.N.Y. Mar. 27, 2017); Maenza v. Colvin, No. 14-CV-6596, 2016 WL 1247210, at *14 (W.D.N.Y. Mar. 24, 2016), are distinguishable from the instant case because of Plaintiff's additional limitation.  Plaintiff is not merely limited to "simple and repetitive tasks" but to tasks with "no more than one or two-step instructions."  (R. 21.)  This additional limitation, falling squarely within the description of reasoning level one, is in apparent conflict with reasoning level two.  See, e.g., Thomas v. Berryhill, 916 F.3d 307, 313 (4th Cir. 2019) (holding "there is an 'apparent conflict' between a limitation to 'short, simple instructions' (as found in [claimant]

29

's RFC) and a need to carry out 'detailed but uninvolved . . . instructions' (as found in jobs requiring Level 2 reasoning)"); Henderson v. Colvin, 643 F. App'x 273, 277 (4th Cir. 2016) ("There is an apparent conflict between an RFC that limits Henderson to one-to-two step instructions and GED Reasoning Code 2, which requires the ability to understand detailed instructions."). Such an apparent conflict warrants probing by the Commissioner. See Lockwood, 914 F.3d at 93. Indeed, it is the Commissioner's duty to "elicit an explanation" from the VE whether the two identified jobs require more than "one or two-step instructions." Id.

> The importance of teasing out such details is precisely why the Commissioner bears an "affirmative responsibility" to ask about "any possible conflict between [VE] evidence and information provided in the [DOT]." Absent such an inquiry, the Commissioner lacks a substantial basis for concluding that no such conflicts in fact exist.

Id. (first quoting SSR 00-4p, 2000 WL 1898704, at *4; then citing Washington v. Comm'r of Soc. Sec., 906 F.3d 1353, 1366 (11th Cir. 2018); emphasis and brackets in original); see also id. at 94.

Here, the Commissioner failed to ask the VE about the apparent conflict between an RFC that limits Plaintiff to one- to two-step instructions and a reasoning level two. In the absence of a reconciliation between the VE's testimony and the apparent conflict with the DOT's officially reported requirements for the subject identified jobs, there is no "substantial evidence capable

of demonstrating that [Plaintiff] can successfully perform work in the national economy." Id. at 94. Because it is not the Court's "role to speculate as to how or whether that conflict might have been resolved had the Commissioner carried out h[is] responsibility to probe such matters," the Court "must reverse and remand for further proceedings so that the Commissioner may have the opportunity to conduct the requisite inquiry in the first instance." Id.; see also Haman, 2019 WL 1383439 at *17 (holding that where there was no VE testimony to reconcile the apparent conflict between the DOT's listing for an designated job and the claimant's RFC limitation, the VE's testimony could not represent substantial evidence demonstrating claimant could successfully perform work in the national economy; stating it is Commissioner's responsibility to resolve such apparent conflicts; remanding to give Commissioner opportunity to conduct inquiry into apparent conflict).

[Remainder of page intentionally left blank.]

CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion (ECF No. 14) is GRANTED, and the Commissioner's Motion (ECF No. 11) is DENIED. This matter is REMANDED for proceedings consistent with this Memorandum and Order.

**IT IS FURTHER ORDERED** that the Clerk of the Court enter judgment accordingly and, thereafter, mark this case CLOSED.

**SO ORDERED.**

 /s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:      December 19, 2022
            Central Islip, New York